IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| SHONDA THOMAS, § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | CIVIL ACTION NO. 9:23-CV-26-MAC |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| **Defendant.** § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff, Shonda Thomas ("Thomas"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

### I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292. Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

deficiencies.  *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.   BACKGROUND

A.   Procedural History

Thomas applied for disability insurance benefits on August 19, 2020, due to impairments that allegedly became disabling on April 11, 2020.  (Tr. 374-385.)  Following the denial of her claim, she requested a hearing before an administrative law judge which was held on July 21, 2021.  (Tr. 52-78.)  Thomas and Susan Rapant, a vocational expert, testified at the hearing.  (*Id.*)

On August 13, 2021, Administrative Law Judge William Howard (ALJ Howard) issued a decision denying Thomas' application.  (Tr. 135-153.)  Thomas requested review of the ALJ's decision by the Appeals Council, which was granted, and the Appeals Council remanded the case for further administrative proceedings.  (Tr. 159-162.)

A second administrative hearing was held on August 31, 2022.  (Tr. 79-107.)  At that hearing, Thomas, Kathy Bottroff (vocational expert), and Nitin Dhiman (medical expert) testified.  (*Id.*)  On September 14, 2022, ALJ Howard again denied Thomas' application for disability benefits.  (Tr. 23-40.)  Thomas appealed this second decision, and the Appeals Council denied her request for review, thereby prompting this appeal.  (Tr. 1-3.)

B.   Factual History

Thomas was 38 years old at the time of her application date, with a high school education and past work experience as a certified nurse's aide.  (Tr. 38.)  Thomas' application was denied at the initial and reconsideration levels.

C.   Administrative Decision and Appeal

ALJ Howard utilized the five-step sequential analysis model specified by regulations and

approved by courts in reaching his decision denying Thomas' application.[3] At step one, ALJ Howard found that Thomas has not engaged in substantial gainful activity since August 19, 2020, the application date. (Tr. 25.) At steps two and three, he found that Thomas has the following severe impairments: psoriatic arthritis, idiopathic thrombocytopenia purpura (ITP), hypertension, anemia, and obesity. (Tr. 25-29.) However, none of these impairments met or medically qualified under the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed Impairments) for presumptive disability. (Tr. 29-30.) ALJ Howard determined that Thomas retained the residual functional capacity (RFC) to perform a limited range of light work, but can only: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand and/or walk for 6 hours in an 8-hour workday with no more than 2 hours of standing and/or walking at a time; never crawl or climb ropes, ladders, or scaffolds; occasionally stoop, kneel, negotiate stairs and ramps; never work in proximity to hazards; and never work in environments with concentrated exposure to pulmonary irritants or heavy industrial vibrations due to her ITP. (Tr. 30-38.)

ALJ Howard found Thomas was not able to perform her past relevant work at step four. (Tr. 38.) However, at step five, ALJ Howard, relying on vocational expert testimony, found that

---

[3] Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
    1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
    2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)
    3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed, and benefits are awarded. If not, the analysis continues.)
    4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).
    5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

Thomas was not disabled because she was able to perform other work that existed in significant numbers in the national economy, such as storage facility rental clerk, office helper, and mail clerk (non-postal).   (Tr. 39-40.)

### III.   POINTS OF ERROR

Thomas argues that ALJ Howard failed to properly consider the medical opinions of Nurse Practitioner Melanie Parker (NP Parker) regarding her physical and mental impairments.   (Doc. No. #15.)   The Defendant responds that all of Thomas' impairments (severe and non-severe) were considered by ALJ Howard in assessing her RFC, and he also properly considered and discounted the medical opinion of NP Parker as unpersuasive.   (Doc. #16.)

### IV.   DISCUSSION AND ANALYSIS

A.   <u>Step Two – Severity of Impairments</u>

At step two of the evaluation process, the ALJ determines whether an applicant has a *severe* impairment or combination of impairments.   20 C.F.R. § 404.1520 (2012).   In *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), the Fifth Circuit considered the standard of "severity" and established that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."   Recently, in *Keel v. Saul*, 986 F.3d 551, 557 (5th Cir. 2021), the Fifth Circuit resolved a split among the district courts in the Fifth Circuit and concluded that Social Security Ruling (SSR) 85-28, while not using the identical language of *Stone*, comports with the *Stone* severity standard.   As the Fifth Circuit stated in *Keel*, SSR 85-28 provides that "'[a]n impairment or combination of impairments' is 'not severe' if 'medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work

5

even if the individual's age, education, or work experience were specifically considered.'" S.S.R. 85-28, 1985 WL 56856, at *3 (1985). The Fifth Circuit concluded that SSR 85-28 uses language "similar" to *Stone*, and that "[t]hough the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error" where an ALJ applies the SSR 85-28 standard. *Keel*, 986 F.3d at 556-557.

ALJ Howard found Thomas had some severe physical impairments but did not find any severe mental impairments. (Tr. 25-29.) He discussed her alleged impairments of depression, anxiety, and ADHD, but found that they were not severe. Thomas argues that ALJ Howard failed to properly consider the severity of these impairments as opined by NP Parker.

In making his step two determination, ALJ Howard references SSR 85-28 and uses the correct standard. (Tr. 26-29.) He addressed Thomas' complaints, discussed her treatment, exam, and the opinion of NP Parker. (*Id.*) He pointed out that although NP Parker found limitations in all levels of functioning, there were no objective signs of inattention or cognitive deficits on exam consistent with the severity indicated by NP Parker. (*Id.*) He also noted that although Thomas' assessment showed the presence of ADHD, it did not indicate the severity. (*Id.*) In addition, her records indicate that her depression was related to situational stressors, including becoming a grandmother, her brother's murder trial and financial issues, and she was in the process of being tapered off of her depression medication. (*Id.*)

Dr. Jean Stanley, Ph.D., LP at Pathways Mental Health Clinic prepared a treatment summary stating that Thomas began services in 2019 and that the primary source of her stress was family dynamics, parenting, and an unhealthy relationship. (Tr. 663.) Her records from Pathways show that in June 2020, her medication was decreased, and she gained some coping skills to manage her anger and anxiety. (Tr. 663-666.) Her mental status exams were normal in

all areas with mild to moderate anxious mood. (*Id.*) She was not seen between January 28, 2020, and February 1, 2021. Dr. Stanley stated that no opinion was being made as to her work capacity. (Tr. 666.) On March 30, 2021, Brandy Goins, MS, LPC, with Pathways administered an ADD assessment and found that her results "may be suggestive of an attention problem, including ADHD." (Tr. 670-671.)

In addition, the state agency medical consultants, Mark McGaughey, Ph.D. and Dave Sanford, Ph.D., both found these impairments were not severe. (Tr. 28, 111-112, 124-125.) ALJ Howard also noted that Thomas had a "plethora of normal mental status exams," and the supplemental evidence received showed a stable psychiatric presentation and good adaptive functioning. (Tr. 28-29.) Accordingly, the court finds that ALJ Howard properly considered Thomas' mental impairments and his findings are supported by substantial evidence. His opinion that Thomas' mental impairments were non-severe coincides with that of the SAMCs, which also found these impairments were non-severe. (Tr. 27, 74, 85.) Accordingly, the court finds no reversible error at step two.

  B. <u>Residual Functional Capacity – Physical Impairments</u>

The regulations state that RFC means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012). Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process. At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly

limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed. Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five). SSR 96-8p, 1996 WL 374184 (July 2, 1996). An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's impairments and functional limitations can perform. *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e*., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g*., stooping, climbing), manipulative (*e.g*., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g*., understanding and remembering instructions and responding appropriately to supervision). *Id.* In addition to these activities, the ability to tolerate various environmental factors (*e.g*., tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In the present action, the ALJ concluded that Thomas can perform light work, including: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand and/or walk for 6 hours in an 8-hour workday with no more than 2 hours of standing and/or walking at a time; never crawl or climb ropes, ladders, or scaffolds; occasionally stoop, kneel, negotiate stairs and ramps; never work in proximity to hazard; and never work in environments with concentrated exposure to pulmonary irritants or heavy industrial vibrations due to her ITP. (Tr. 30-38.)  Thomas argues that the ALJ's RFC finding is unsupported by substantial evidence because it conflicts with NP Parker's medical opinions regarding her physical functionality.

### 1. *Evaluation of Medical Opinions*

The Social Security Administration promulgated a new rule regarding residual functional capacity determinations to govern all claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c (2017).  Thomas applied for disability insurance benefits on August 19, 2020.  (Tr. 25.)  Therefore, the new rule applies.  This rule addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings.  *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.  *Id.* at § 404.1520c(a).  Instead, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency.  *Id.* at § 404.1520c(b)(2).  The other

factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The ALJ must articulate how persuasive he finds each of the opinions in the record and explain the consideration of the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In those cases, the ALJ must articulate the consideration of the other factors.

Thomas argues that ALJ Howard erred in finding the opinion of NP Parker unpersuasive as to her physical RFC. ALJ Howard considered this opinion, as well as the opinions of medical expert Dr. Nitin Paul Dhiman and the SAMCs, Drs. Amita Hegde, M.D. and Dennis Pacl, M.D. (Tr. 36-38.) He discussed each opinion in detail regarding its supportability and consistency with the record and decided how persuasive the opinion was in reaching his RFC assessment. (*Id.*)

On April 6, 2021, treating NP Parker with Groveton Family Medical examined Thomas for her impairments. (Tr. 675-676.) She filled out a checklist form opining that Thomas: must recline or lie down during the workday outside of normal breaks; sit and stand/walk for 2 hours in an 8-hour workday; take unscheduled breaks; frequently lift/carry ten pounds or less, 20 pounds occasionally; never lift 50 pounds; can only perform handling 30% of the time and fingering 30-40% of the time; and would be absent from work three to four times a month. (*Id.*) The only diagnosis listed, however, on this form is ADD and inattention which does not comport with her physical RFC assessment, or the limitations listed. (Tr. 675.) NP Parker lists the same diagnosis for her mental capacity RFC checklist form, which was done separately. (Tr. 679-681.) As

10

noted by ALJ Howard, NP Parker's treatment notes do not document manipulative limitations and were not consistent with the need for these kinds of sitting limitations, breaks, and absenteeism. (Tr. 37.) The only physical complaints listed during Thomas' exams were edema in her legs and joint pain, but she had a normal gait and "no gross abnormalities with extremities; normal muscle tone & moves all extremities well." (Tr. 736, 690.) NP Parker referred Thomas to Dr. Bochra Jandali, a rheumatologist for a joint pain evaluation. Dr. Jandali noted that Thomas had tender wrists but no synovitis and had full range of motion of all joints and spine. (Tr. 745.) Thomas tested negative for lupus, rheumatoid arthritis, and a genetic test. (Tr. 839, 856.) She was given medication and saw improvement in her joint pain. (Tr. 853-856.) Dr. Jandali stated that her pain seems to be mechanical since all tests were negative, but she "could have" psoriatic arthritis due to her history of psoriasis. (Tr. 853-856; 882.)

Other medical records with Dr. Pierre Khoury also indicate that while she is symptomatic for thrombocytopenia, she is "completely ambulatory." (Tr. 571.) Dr. Warrier also noted on exam that Thomas complained of joint pain, but she had no definite synovitis around the joints of the wrists, normal gait, and normal strength in her extremities. (Tr. 656-657.)

Given the lack of consistency and support in the record, ALJ Howard found the opinion of NP Parker unpersuasive. Furthermore, ALJ Howard stated that he found the opinion of Dr. Dhiman, M.D. persuasive over that of NP Parker because of his higher level of expertise as a board-certified doctor in internal medicine for the last 13 years and the supportability and consistency of his findings. (Tr. 37, 86.) Dr. Dhiman reviewed Thomas' medical records and testified as a medical expert in this case. (Tr. 86-92.) He found that Thomas' records show diagnoses of psoriatic arthritis, idiopathic thrombocytopenia purpura (ITP)[4], and high blood

---

[4] ITP is an autoimmune blood disorder characterized by an abnormal decrease in the number of platelets in the blood, which can result in easy bruising, bleeding gums, and internal bleeding. *Idiopathic Thrombocytopenic Purpura*, JOHN

pressure. (Tr. 87.) He opined that Thomas can: lift 20 pounds occasionally or 10 pounds frequently; sit/stand/walk 6 hours in an 8-hour workday (but only 2 hours at a time for walking); climb ramps and stairs frequently; never climb ladders, ropes, or scaffolds; stoop, crouch, crawl frequently; no manipulative restrictions; no talking, hearing, tasting, smelling restrictions; avoid working at unprotected heights, heavy machinery, and vibrations; only occasional exposure to pulmonary irritants; and frequently push/pull. (Tr. 37; 88-89.) Many of these limitations are in consideration of her ITP as it can cause dizziness, fatigue, and a propensity for pulmonary infection. (*Id.*) ALJ Howard found this opinion generally persuasive as it was consistent with the record showing many unremarkable physical examinations and supported by the medical records he reviewed. (Tr. 38.)

On October 26, 2020, SAMCs, Dr. Amita Hegde, M.D. evaluated Thomas' records and found that she had the RFC to perform the limitations as set forth in ALJ Howard's findings except ALJ Howard further limited her postural (climbing, balancing, stooping, kneeling, crouching, crawling) and environmental limitations. (Tr. 113-115.) On March 16, 2021, Dr. Dennis Pacl, M.D. evaluated Thomas' updated records and made the same findings. (Tr. 127-130.) Although ALJ Howard found many of the same limitations, he noted these opinions were unpersuasive since he gave additional postural limitations (in Thomas's favor) in consideration of her severe obesity and reports of joint pain and fatigue. (Tr. 36.)

After consideration of all of the evidence, the undersigned finds that there is substantial evidence supporting ALJ Howard's findings.

---

HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/idiopathic-thrombocytopenic-purpura#:~:text=Idiopathic%20thrombocytopenic%20purpura%20is%20a,last%20longer%20than%206%20months. (last visited Mar. 26, 2024); (Tr. 87).

## V. RECOMMENDATION

ALJ Howard's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections. Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 7th day of May, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE